IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-92

 No. COA21-267

 Filed 15 February 2022

 Wake County, No. 18 CVS 9604

 TARA DOW-REIN, Plaintiff,

 v.

 MELISSA JONES SARLE; PARAMOUNT SHOW STABLES INC.; WILLIAM
 HAROLD SCHAUB; W. H. SCHAUB STABLES, INC. d/b/a OVER THE HILL FARM;
 ALLYSON JACOBY COLUCCIO; HIDDEN RIDGE INTERNATIONAL, INC.; EVAN
 COLUCCIO, EMC FARMS, INC. a/k/a EMC INTERNATIONAL, INC. d/b/a EMC
 INTERNATIONAL STABLES or EMC INTERNATIONAL SALES; ANDREW
 KOCHER; and ANDY KOCHER LLC, Defendants.

 Appeal by defendants from order entered 25 November 2020 by Judge Keith

 Gregory in Wake County Superior Court. Heard in the Court of Appeals 6 October

 2021.

 Ragsdale Liggett PLLC, by Amie C. Sivon, Dorothy Bass Burch, John W. (“Bo”)
 Walker, and Sandra Mitterling Schilder, for plaintiff-appellee.

 Young Moore and Henderson, P.A., by David W. Earley and Walter E. Brock,
 Jr., for defendants-appellants William Harold Schaub and W. H. Schaub
 Stables, Inc. d/b/a Over the Hill Farm.

 DIETZ, Judge.

¶1 Plaintiff Tara Dow-Rein brought this action after buying two horses for her

 daughter, both of which Dow-Rein found unfit for their intended purpose. Dow-Rein

 asserted fraud, breach-of-contract, and other related claims against a number of
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 defendants, including Defendants William Schaub and W. H. Schaub Stables, Inc.

 (the Schaub Defendants), who sold her one of the horses and facilitated the purchase

 of the other.

¶2 The Schaub Defendants moved to dismiss for lack of personal jurisdiction.

 After the trial court denied the motion to dismiss, the Schaub Defendants appealed

 and we remanded the case for additional fact findings. The trial court entered a new

 order with additional findings that again denied the motion to dismiss. This appeal

 followed.

¶3 As explained below, we reverse the trial court’s order. The trial court found

 that Dow-Rein initiated contact with the Schaub Defendants; traveled to the Schaub

 Defendants’ farm in Florida to view the first horse, Season; negotiated the sale of

 Season in Florida; and then picked up Season in Florida to bring back to North

 Carolina. The court also found that the Schaub Defendants arranged for a second

 horse, Fred, to be transported from Virginia to Maryland to be shown to Dow-Rein.

¶4 The Schaub Defendants’ only contact with North Carolina concerning these

 horse sales was when Dow-Rein sent the executed contract for Season from North

 Carolina to the Schaub Defendants in Florida, and later sent the payment from North

 Carolina to Florida.

¶5 These contacts are insufficient to show that the Schaub Defendants

 purposefully availed themselves of the privilege of conducting activities in North
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 Carolina. We therefore reverse the trial court’s order and remand for entry of an order

 dismissing the claims against the Schaub Defendants for lack of personal jurisdiction.

 Facts and Procedural History

¶6 In 2015, Plaintiff Tara Dow-Rein hired her North Carolina riding trainer,

 Defendant Melissa Sarle, to assist her in locating and purchasing a horse for Dow-

 Rein’s 11-year-old daughter. With Sarle’s assistance, Dow-Rein traveled to Florida to

 meet Defendant William Schaub, who showed Dow-Rein a horse named Season at his

 Florida stable.

¶7 Dow-Rein purchased Season from Schaub and his corporate entity, W. H.

 Schaub Stables, Inc. Schaub signed a bill of sale for Season in Florida and sent it to

 Dow-Rein, who signed it and emailed it back. Dow-Rein then wired the $132,000

 purchase price for Season from her North Carolina bank account to the Schaub

 Defendants in Florida. Dow-Rein took possession of Season in Florida and arranged

 to ship the horse to North Carolina.

¶8 In 2016, the Schaub Defendants provided horse boarding services for Beau,

 another horse owned by Dow-Rein. In connection with these services, the Schaub

 Defendants sent invoices to Dow-Rein’s home address in North Carolina and kept

 Dow-Rein’s credit card information on file. Those services are unrelated to the legal

 claims at issue in this case.

¶9 After Season arrived in North Carolina, the horse was diagnosed with chronic
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 lameness that made him unsuitable for Dow-Rein’s intended use. Dow-Rein began

 looking for another horse. In October 2016, Sarle again contacted Schaub on behalf

 of Dow-Rein, and Schaub arranged for a second horse, Fred, to be brought from

 Virginia to Maryland to show to Dow-Rein. Schaub then referred Dow-Rein to the

 brokers for Fred, who are Virginia residents. The Schaub Defendants had no further

 involvement in the sale of Fred. As with Season, Dow-Rein later determined that Fred

 was unsuitable for Dow-Rein’s intended use.

¶ 10 On 30 July 2018, Dow-Rein filed an unverified complaint asserting claims for

 fraud, negligence, unfair and deceptive trade practices, and breach of contract related

 to the sales of Season and Fred. In her complaint, Dow-Rein alleged that the Schaub

 Defendants knew about the lameness issue with Season, that all defendants knew of

 Fred’s behavior issues, and that the defendants concealed that information from her

 to sell Season and Fred for higher prices. Dow-Rein later amended the complaint. As

 alleged in the amended complaint, Schaub is a resident of Florida, his corporate

 entity is a Florida corporation, and his business operations are located in Florida.

¶ 11 The Schaub Defendants moved to dismiss the claims against them for lack of

 personal jurisdiction and improper venue. In support of their motion to dismiss, the

 Schaub Defendants filed affidavits from Schaub along with discovery responses and

 document production. Dow-Rein filed a single affidavit from a paralegal at her

 counsel’s firm, stating that a review of online records indicated that Schaub owned
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 horses that competed in North Carolina horse shows in 2015 and 2016.

¶ 12 The trial court heard Defendants’ motions to dismiss and entered an order

 denying the motions. Defendants appealed. On 7 July 2020, this Court filed an

 opinion in that first appeal, vacating the trial court’s order and remanding the matter

 for the trial court to make necessary jurisdictional findings of fact “based on the

 appropriate evidence in the record”—specifically, the parties’ competing affidavits,

 the discovery responses, and any undisputed allegations from the unverified

 complaint. Dow-Rein v. Sarle, 272 N.C. App. 446, 843 S.E.2d 731, 2020 WL 3708309,

 at *3 (2020) (unpublished).

¶ 13 On 28 October 2020, the trial court held a new hearing on the Schaub

 Defendants’ motion to dismiss. The parties sought to introduce additional evidence

 at the new hearing that was not before the court at the first hearing. The trial court

 ruled that it would not consider any additional evidence because this Court’s mandate

 instructed the trial court to make additional findings on remand based on the

 “evidence in the record.”

¶ 14 On 25 November 2020, the trial court entered a written order denying the

 Schaub Defendants’ motion to dismiss. The Schaub Defendants appealed.1

 1 The trial court also entered a written order granting a motion to dismiss filed by

 other defendants in this action. That order is the subject of a separate, related appeal in this
 matter. See Dow-Rein v. Sarle, No. COA21-262.
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 Analysis

¶ 15 The Schaub Defendants challenge the trial court’s denial of their motion to

 dismiss for lack of personal jurisdiction.

¶ 16 In civil proceedings, the plaintiff “bears the burden of proving, by a

 preponderance of the evidence, grounds for exercising personal jurisdiction over a

 defendant.” Bauer v. Douglas Aquatics, Inc., 207 N.C. App. 65, 68, 698 S.E.2d 757,

 761 (2010). As we noted in the first appeal in this case, this personal jurisdiction issue

 involves fact disputes addressed through competing affidavits of the parties. Dow-

 Rein v. Sarle, 272 N.C. App. 446, 843 S.E.2d 731, 2020 WL 3708309, at *2–3 (2020)

 (unpublished). In this circumstance, “the trial judge must determine the weight and

 sufficiency of the evidence presented in the affidavits much as a juror.” Banc of Am.

 Sec. LLC v. Evergreen Int’l Aviation, Inc., 169 N.C. App. 690, 694, 611 S.E.2d 179,

 183 (2005). We are bound by the trial court’s determination of the “credibility or

 weight” of the facts presented in the competing affidavits. Id. at 695, 611 S.E.2d at

 183.

¶ 17 In a case like this one, involving what is known as “specific jurisdiction,” courts

 examine whether the defendants had “fair warning that a particular activity may

 subject them to the jurisdiction of a foreign sovereign, so that they may structure

 their primary conduct with some minimum assurance as to where that conduct will
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 and will not render them liable to suit.”2 Mucha v. Wagner, 378 N.C. 167, 2021-NCSC-

 82, ¶ 10. The acts necessary to provide this fair warning often are described as

 “purposeful availment” because courts examine whether the defendants purposefully

 availed themselves of the privilege of conducting activities in North Carolina. Id. ¶

 11. Identifying which party initiates the contact with the forum state is “a critical

 factor in assessing whether a nonresident defendant has made ‘purposeful

 availment.’” CFA Medical, Inc. v. Burkhalter, 95 N.C. App. 391, 395, 383 S.E.2d 214,

 216 (1989). To satisfy the test, the defendant “must expressly aim his or her conduct

 at that state” or “must have targeted the forum state specifically.” Mucha, ¶¶ 16, 20.

¶ 18 This Court has decided two cases involving the sale of horses by an out-of-state

 seller to a North Carolina buyer, and these cases illustrate how to assess purposeful

 availment in this context. First, in Watson v. Graf Bae Farm, Inc., this Court held

 that the out-of-state seller’s contacts were sufficient to show purposeful availment

 because the seller advertised horses for sale in North Carolina, the contract for the

 sale of the horse required the horse be examined by a North Carolina veterinarian,

 the seller delivered the horse to North Carolina as part of the contract, and the final

 act of the contract (a veterinarian exam) occurred in North Carolina. 99 N.C. App.

 2 There is no dispute concerning the application of North Carolina’s long-arm statute

 and no argument that the Schaub Defendants have sufficient contacts with North Carolina
 to subject them to general jurisdiction.
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 210, 213, 392 S.E.2d 651, 653 (1990).

¶ 19 By contrast, in Hiwassee Stables, Inc. v. Cunningham, this Court held that the

 seller’s contacts were not sufficient to show purposeful availment because the North

 Carolina buyers “made the initial contact” with the seller in Florida and the seller

 performed all key aspects of the sale in Florida. 135 N.C. App. 24, 29, 519 S.E.2d 317,

 321 (1999). We observed that the defendants’ contacts with North Carolina consisted

 solely of returning the buyers’ phone call, entering into a contract with them, sending

 billing statements to the buyers in North Carolina, and receiving a payment sent

 from North Carolina. Id. Citing Supreme Court precedent, we held that entering into

 a contract with a North Carolina resident “may be a sufficient basis for the exercise

 of in personam jurisdiction,” but only if the contract “has a substantial connection to

 this state.” Id. The Court held that the connections in Hiwassee Stables were not

 substantial enough to find purposeful availment because “none of the alleged acts”

 giving rise to the claims occurred in North Carolina and the seller “never shipped

 anything to this state beyond the one billing statement.” Id.

¶ 20 The trial court recognized that this case is more closely analogous to Hiwassee

 Stables than to Watson, but distinguished Hiwassee Stables by concluding that the

 Schaub Defendants “were engaged in an ongoing business relationship” with Dow-

 Rein.

¶ 21 The trial court’s discussion of this “ongoing business relationship” likely
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 derives from our Supreme Court’s recent decision in Beem USA Ltd.-Liab. Ltd. P’ship

 v. Grax Consulting LLC, 373 N.C. 297, 306, 838 S.E.2d 158, 164 (2020), although the

 trial court did not cite Beem in its order. In Beem, the Supreme Court held that a

 defendant purposefully availed itself of the privilege of conducting activities in North

 Carolina when a representative of the defendant “came to North Carolina to open a

 bank account,” “traveled to this state on three separate occasions to discuss” the

 subject matter of the lawsuit, and contacted the North Carolina resident about the

 matter at issue in the lawsuit “numerous times each month for approximately a year.”

 Id. The Supreme Court held that this conduct “established an ongoing relationship

 with persons and entities located within this state such that it could reasonably

 anticipate being called into court here.” Id.

¶ 22 The trial court’s findings in this case are far removed from the contacts

 described in Beem. Dow-Rein initiated contact with the Schaub Defendants—they did

 not reach out to her. The Schaub Defendants did not travel to North Carolina nor did

 they make calls to North Carolina. The negotiations for the sale of Season took place

 in Florida. The Schaub Defendants delivered Season to Dow-Rein in Florida. The

 Schaub Defendants’ only contact with North Carolina during the entire transaction

 was receiving the executed bill of sale and payment that Dow-Rein sent from North

 Carolina to the Schaub Defendants in Florida.

¶ 23 The trial court, in concluding that there was an “ongoing business relationship”
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 between the parties, referenced “multiple documents” that the Schaub Defendants

 sent to North Carolina for their boarding services for another of Dow-Rein’s horses,

 Beau. But those boarding services are unrelated to the claims in this case; they were

 invoices for boarding Beau at the Schaub Defendants’ farm in Florida and have no

 connection to the sale of Season and, later, Fred for potential use by Dow-Rein’s

 daughter in North Carolina. Similarly, with respect to Fred, the Schaub Defendants’

 only conduct was arranging for Fred to be transported from Virginia to Maryland so

 that Dow-Rein could see Fred when she traveled to Maryland. This conduct had no

 connection to North Carolina at all.

¶ 24 Simply put, the Schaub Defendants’ contacts with North Carolina are

 insufficient to show that they purposefully availed themselves of the privilege of

 conducting activities in North Carolina. This dispute involves a buyer who traveled

 to Florida, negotiated to buy a horse in Florida, and then took possession of the horse

 in Florida before bringing it to North Carolina. The sellers later arranged for another

 horse to be transported from Virginia to Maryland so that the buyer could travel there

 and view the animal. The sellers, who are Florida residents and who did not reach

 out to our State in these business dealings, could not reasonably have anticipated

 being haled into court in North Carolina over claims concerning either of these horses.

 We therefore reverse the trial court’s order and remand this case for the trial court

 to dismiss Dow-Rein’s claims against the Schaub Defendants for lack of personal
 DOW-REIN V. SARLE

 2022-NCCOA-92

 Opinion of the Court

 jurisdiction.

 Conclusion

¶ 25 We reverse the trial court’s order and remand for entry of an order dismissing

 the claims against Defendants-Appellants for lack of personal jurisdiction.

 REVERSED AND REMANDED.

 Judges MURPHY and ARROWOOD concur.